UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MBC GROUP, INC., | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | Cause No. 1:22-cv-1869-RLM-TAB |
| v. | ) | |
| | ) | |
| CONDUENT STATE & LOCAL | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| *Defendant* | ) | |

## OPINION AND ORDER

MBC Group, Inc. sued Conduent State & Local Solutions, Inc. in Marion County Superior Court, alleging breach of contract and unjust enrichment. Conduent removed the case and moves to dismiss. MBC moves to exclude materials Conduent attached to its reply brief, and Conduent moves for leave to file a surreply to that motion. For the following reasons, the court GRANTS Conduent's motion to dismiss, GRANTS MBC's motion to exclude, and DENIES Conduent's motion for leave to file a surreply.

## I.   BACKGROUND

A court considering a Rule 12(b)(6) motion to dismiss assumes the plaintiff's well-pleaded facts are true, views the allegations in the light most favorable to the plaintiff, and draws all inferences in the plaintiff's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010) (citation omitted). MBC attached the contract between the State of Indiana and

1

Conduent ("Prime Contract") and the contract between MBC and Conduent ("Subcontract") to the complaint. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10, but if the "instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations," Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg, 813 F. Supp. 2d 1069, 1080 (S.D. Ind. 2011) (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

The Prime Contract provides that Conduent would provide staffing services to the Indiana Family and Social Services Administration.[1] It says the State awarded the Prime Contract to Conduent in part because of its Indiana Veteran Owned Small Business ("IVOSB") participation plan. It lists MBC as an IVOSB subcontractor that would participate in 3.05 percent of services under the Prime Contract. The Prime Contract requires Conduent to submit copies of its agreements with IVOSB subcontractors to the Indiana Department of Administration's IVOSB Division. The IVOSB Division must review and approve any requests for changes to the IVOSB participation plan. Conduent's "failure to comply with the provisions in [the IVOSB] clause may be considered a material breach of the [Prime] Contract." [Doc. No. 1-2 at 23].

The complaint includes excerpts from the Indiana Division of Supplier Diversity's Minority and/or Women's Business Enterprise ("MBE/WBE") and

---

[1] The Prime Contract's forum selection clause selects Indiana law, excluding its choice of law rules.

IVOSB policy statement, which says contractors must use IVOSB subcontractors at their committed participation percentages and outlines the procedures for modifying the IVOSB participation plan. Those procedures involve the subcontractor signing a notification document and the Division interviewing interested parties, including the subcontractor, to determine whether a change is appropriate.

Conduent and MBC entered into the Subcontract pursuant to the Prime Contract's directive.[2] The Subcontract says MBC will perform a portion of services under the Prime Contract for Conduent, as described in the Statement of Work. The Statement of Work provides that MBC (but not Conduent) must comply with the terms of the Prime Contract, and it incorporates particular parts of the Prime Contract by reference. The Subcontract doesn't explicitly include the 3.05 percent participation rate listed in the Prime Contract. The complaint alleges that the Subcontract incorporates that figure by reference because the Subcontract "is subordinate to the Prime Contract." [Doc. No. 1-2 at 4, 95].

The Subcontract provides that "Conduent has the primary responsibility for performance under the Prime Contract" and may perform, obtain from another entity, or otherwise remove any portion of the services being performed by MBC with 30 days' written notice to MBC. [Doc. No. 1-2 at 95, 136]. Conduent agrees to pay MBC based on MBC's invoices for services rendered and other pre-

---

[2] The Subcontract's forum selection clause selects New York law, excluding its choice of law rules.

approved costs, subject to Conduent's approval. The Subcontract says it is the entire agreement between the parties and supersedes any prior agreements that aren't specifically referenced and incorporated into the Subcontract.

MBC alleges that it began providing services "under the Prime Contract" to Conduent in 2019, and it and Conduent executed the Subcontract on February 20, 2020. [Doc. No. 1-2 at 4 n.2]. As of August 1, 2022, Conduent has paid MBC $1,931,972.87. MBC alleges that Conduent has received $188,837,021 under the Prime Contract, so MBC is entitled to 3.05 percent (which it calculates as $5,759,529.14). MBC alleges Conduent either performed services that should have been allocated to MBC, contracted the services out to another provider, or a combination of the two, but did so without amending the Prime Contract's IVOSB participation plan or giving it 30 days' notice under the Subcontract.

MBC sent Conduent an invoice for the difference between the amount Conduent has paid and the amount it alleges Conduent owes. Conduent disputes that it owes MBC the money and has refused to pay. MBC sued, alleging breach of both the Prime Contract and Subcontract and unjust enrichment. After removing the case, Conduent moves to dismiss.

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That

statement "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), and raises a right to relief above the speculative level, Bell Atl. Corp. v. Twombly, 550 U.S. at 555. A plaintiff's claim need only be plausible, not probable. Indep. Tr. Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 934-935 (7th Cir. 2012). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" won't suffice. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A. Conduent's Motion to Dismiss

Conduent says the court should dismiss each of MBC's claims.

#### MBC's Claim for Breach of the Prime Contract

Conduent argues that the court should dismiss MBC's breach of contract claim for the Prime Contract because MBC isn't a third-party beneficiary, so it doesn't have a right to enforce the Prime Contract.

"Under Indiana law, generally only parties to a contract have rights under the contract." Bowman v. Int'l Bus. Machs. Corp., 853 F. Supp. 2d 766, 769

(S.D. Ind. 2012) (citing <u>Deckard v. Gen. Motors Corp.</u>, 307 F.3d 556, 561 (7th Cir. 2002)). A third party may enforce the contract if "(1) the parties to the contract intend to benefit [the] third party, (2) the contract imposes a duty on one of the parties in favor of the third party, and (3) the performance of the terms of the contract directly benefits the third party." <u>Id.</u> (citing <u>Deckard v. Gen. Motors Corp.</u>, 307 F.3d at 561).

"[T]he intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence." <u>Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc.</u>, No. 1:15-cv-10-TWP-MJD, 2015 WL 5210668, at *8 (S.D. Ind. May 22, 2015) (alteration in original) (quoting <u>Luhnow v. Horn</u>, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001)), *R. & R. adopted as modified*, 2015 WL 5210539 (Sept. 3, 2015). "[I]t must appear that 'it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.'" <u>Id.</u> (quoting <u>Cain v. Griffin</u>, 849 N.E.2d 507, 514 (Ind. 2006)). "It is not enough that performance of the contract would be of benefit to the third party." <u>Id.</u> (quoting <u>Cain v. Griffin</u>, 849 N.E.2d at 514); *see* <u>Centennial Mortg., Inc. v. Blumenfeld</u>, 745 N.E.2d 268, 275-276 (Ind. Ct. App. 2001) ("A third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor." (citing <u>Harvey v. Lowry</u>, 183 N.E. 309, 311 (Ind. 1932)).

The intent "must affirmatively appear from the language of the instrument when properly interpreted and construed." Id. (quoting Cain v. Griffin, 849 N.E.2d at 514). "If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg, 813 F. Supp. 2d 1069, 1080 (S.D. Ind. 2011) (alteration in original) (quoting Dawson v. Gen. Motors Corp., 977 F.2d 369, 373 (7th Cir. 1992)).

In Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., the court determined that an MBE/WBE subcontractor listed in the defendant's participation plan failed to state a claim for breach of contract because it wasn't a third-party beneficiary to the prime contract. 2015 WL 5210668, at *18.[3] The court concluded that the prime contract's specific reference to the subcontractor was relevant to the third-party beneficiary analysis, but it wasn't sufficient on its own to establish that the subcontractor was a third-party beneficiary. Id. at *8; see also ESG Tech. Servs., LLC v. Advantage Health Sols., Inc., No. 1:09-cv-30-TWP-TAB, 2011 WL 2267550, at *6 (S.D. Ind. June 6, 2011) (deciding on summary judgment that "[t]he fact that [plaintiff] is mentioned in the contract . . . does not establish an intent to benefit [plaintiff] as a third-party beneficiary; rather, naming a party is merely evidence of such an intent" (citations omitted)).

---

[3] The parties seem to agree IVOSB subcontractors and MBE/WBE subcontractors should be analyzed in the same way. The court sees no reason to distinguish the two.

The complaint alleges that "[t]he Prime Contract is clearly intended by the named parties to benefit MBC. MBC is specifically named as an IVOSB plan participant." [Doc. No. 1-2 at 6]. Under this court's precedent, this can't establish, at least on its own, that MBC is a third-party beneficiary.

MBC points to other factual allegations, but those don't lend it any support. First, it says it and Conduent successfully executed a subcontract, whereas the parties in ESG and Bucher didn't. MBC seems to argue that if there had been subcontracts in those cases, the court would have found that the plaintiffs were third-party beneficiaries to the prime contracts. This reading is too great a stretch. The ESG court found the subcontract requirement showed that the contracting "parties did not intend to bestow third-party benefits on any of the subcontractors," and rather that further negotiation and contract formation was needed to establish the subcontractor's rights. ESG Tech. Servs., LLC v. Advantage Health Sols., Inc., 2011 WL 2267550, at *7 ("Any contractual rights of the subcontractors would derive from being party to the subcontract and not from being a third-party beneficiary to the State contract."); *see* Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., 2015 WL 5210668, at *12. It would be inappropriate to read ESG or Bucher as implying that the execution of a subcontract would change the Prime Contract parties' intent.

Next, MBC says that the Prime Contract requires Conduent to get the State's approval to make any changes to IVOSB subcontracts. MBC notes that the prime contract in ESG didn't impose a formal process to amend subcontracts

(although it did require the State's written approval), and the prime contract in
Bucher gave the contractor "complete discretion to hire or fire subcontractors."
[Doc. No. 22 at 16 (quoting Bucher & Christian Consulting, Inc. v. Novitex Enter.
Sols., Inc., 2015 WL 5210668, at 11)]. Neither subcontractor had the right to
object to changes to the participation plan. The Prime Contract here requires the
State's approval of any changes to the IVOSB section, and MBC alleges the
procedures for getting that approval require giving MBC the opportunity to
participate. See [Doc. No. 1-2 at 3 (citing Indiana Department of Administration
MBE/WBE and IVOSB Participation Policy, DSD Compliance 100 rev. 4-21)].

MBC hasn't identified any language in the Prime Contract that
incorporates the policy into the Prime Contract. See Care Grp. Heart Hosp., LLC
v. Sawyer, 93 N.E.3d 745, 754-755 (Ind. 2018) ("For incorporation to occur, the
incorporating contract must include a clear and explicit expression of intent to
be bound by the auxiliary content." (citation omitted)). The Prime Contract's
merger clause says that "[n]o understandings, agreements, or representations,
oral or written, not specified within this Contract will be valid provisions of this
Contract." [Doc. No. 1-2 at 25].

MBC suggests that the policy statement is Indiana law, which need not be
explicitly mentioned or incorporated to govern the Prime Contract. See Evergreen
Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth., 848 F.3d 822, 832 (7th Cir.
2017) (citing Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n, 499 U.S. 117,
130 (1991)) (laws in existence at time and place of contracting are incorporated

into contract). The court isn't convinced that an agency's policy statement falls within this rule. *See* Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., 2015 WL 5210668, at *15 (rejecting argument that State policy was incorporated into prime contract). MBC doesn't present any argument or citation on the topic. Regardless, even if the policy was incorporated, "any duty imposed by the . . . policy was not imposed 'in favor of the third party.'" Id. (citation omitted).

MBC also points out that Conduent's "failure to comply with the provisions in the [IVOSB] clause may be considered a material breach of the [Prime] Contract." *See* [Doc. No. 1-2 at 25]. In Bucher, the court rejected an analogous argument that the penalty clause (which applied if the contractor didn't comply with the participation plan rates) showed an intent to benefit the subcontractors. Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., 2015 WL 5210668, at *9. The court concluded that the penalty provision showed an intent to advance the State's interest in supporting MBE/WBE businesses as a whole, not an intent to benefit the plaintiff as an individual MBE/WBE. Id. Although the Prime Contract's language is slightly different from the language at issue in Bucher, the court agrees with the reasoning there; this clause doesn't confer any rights on MBC or show an intent to benefit MBC.

The only evidence of an intent to benefit MBC in the Prime Contract is that MBC is listed as an IVOSB participant, which can't by itself establish that MBC

is a third-party beneficiary. Accordingly, the court doesn't address the remaining two elements of the third-party beneficiary test.

MBC seems to argue in the alternative that the Prime Contract is ambiguous as to whether MBC should be allocated 3.05 percent of "participation" in the Prime Contract or 3.05 percent of its "benefits and proceeds." [Doc. No. 22 at 16-17 n.14]. The court needn't resolve whether this language is ambiguous because it wouldn't change that MBC hasn't stated a claim for breach of contract as a third-party beneficiary.

MBC hasn't pleaded facts to establish a third-party breach of contract claim. This circuit has a liberal policy in favor of permitting plaintiffs to amend their complaints at least once before dismissing a case, *see* <u>Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.</u>, 786 F.3d 510, 519 (7th Cir. 2015), so the court dismisses Count I without prejudice.

*MBC's Claim for Breach of the Subcontract*

Conduent says the court should dismiss MBC's breach of contract claim for the Subcontract because the 3.05 percent participation rate isn't part of the Subcontract and because MBC hasn't alleged any damages related to breach of the Subcontract.

MBC concedes—in both the complaint and its brief—that the Subcontract doesn't explicitly include the 3.05 percent participation rate, but it alleges that

the Subcontract incorporates the rate because the Subcontract incorporates portions of the Prime Contract in the Statement of Work and because the Subcontract is subordinate to the Prime Contract.

The Subcontract incorporates and reproduces the language from particular sections of the Prime Contract, but says nothing about the IVOSB section. The Subcontract explicitly provides that if "other Prime Contract requirements apply to [MBC] or this [Statement of Work], the parties . . . agree to negotiate the inclusion of such amended Prime Contract Language through an amendment to this [Statement of Work]." [Doc. No. 1-2 at 114]. Still, MBC seems to conflate the incorporation of some parts of the Prime Contract as the incorporation of the entire Prime Contract. It also seems to suggest that the Subcontract's incorporation of schedules attached as exhibits shows that the parties intended to incorporate unmentioned parts of the Prime Contract.

Following New York law, the court won't read a partial incorporation of certain sections as a blanket incorporation of the entire Prime Contract. *See* VRG Linhas Aereas S/A v. MatlinPatterson Glob. Opportunities Partners II L.P., 605 F. App'x 59, 61 (2d Cir. 2015) ("Where . . . the parties to an agreement choose to cite in the operative contract 'only a specific portion' of another agreement, [courts] apply 'the well-established rule that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their agreement only for the purpose specified."'" (citation omitted)); CooperVision, Inc. v. Intek Integration Techs., Inc., 794 N.Y.S.2d 812, 819 (N.Y. App. Div. 2005)

(finding that parties' explicit incorporation of certain provisions showed intent not to incorporate other provisions).

MBC also argues that the Subcontract incorporates the entire Prime Contract because the Subcontract is "subordinate to" the Prime Contract. This argument is unavailing. *See* ACS State & Loc. Sols., Inc. v. Citicorp Elec. Fin. Servs., Inc., 5 A.D.3d 105, 106 (N.Y. App. Div. 2004) (summarily rejecting all of plaintiff's arguments, including that subordination clause showed intent to incorporate prime contract); Brief of Defendant-Respondent at *22-23, ACS State & Loc. Sols., Inc. v. Citicorp Elec. Fin. Servs., Inc., No. 3011, 2003 WL 25568329, at *22-23 (Dec. 10, 2003) (responding to plaintiff's argument about subordination).

The Subcontract doesn't reference the 3.05 percent rate or incorporate the IVOSB section of the Prime Contract, so Conduent's commitment to that percentage in the Prime Contract doesn't give rise to a breach of contract claim under the Subcontract.

Conduent says the court should dismiss MBC's claim for breach of the Subcontract because MBC hasn't alleged any damages relating to the alleged breach. It argues that MBC's only alleged damages are "anticipatory amounts" arising under the IVOSB participation plan rate, rather than money owed for services MBC performed under the Subcontract or damages arising from not giving it 30 days' notice. [Doc. No. 21 at 19]; *see* [Doc. No. 1-2 at 136 (notice requirement)]. MBC concedes that Conduent has paid for the services MBC has

actually performed, but it says Conduent wrongly deprived it of the opportunity to perform the full 3.05 percent allocated to it in the Prime Contract.

To state a claim for breach of contract under New York law, the plaintiff "must allege the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." Khodeir v. Sayyed, 323 F.R.D. 193, 202 (S.D.N.Y. 2017) (citations omitted). "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." Id. (quoting Lexington 360 Assocs. v. First Union Nat'l Bank of N.C., 234 A.D.2d 187, 189-190 (N.Y. App. Div. 1996)).

The complaint alleges that MBC has suffered monetary damages as a result of the alleged breach of the Subcontract, but MBC only connects its claim to the Prime Contract's IVOSB participation plan rate. The court already determined that MBC hasn't sufficiently alleged that it is a third-party beneficiary to the Prime Contract or that the IVOSB participation plan is incorporated into the Subcontract. Even making all inferences in favor of MBC, MBC hasn't alleged any damages connected to Conduent's alleged breach of the notice requirement or any other part of the Subcontract.

MBC hasn't pleaded facts to establish a claim for breach of the Subcontract. It might be possible for MBC to articulate damages arising out of the breach of notice provision, *see* Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d at 520 (citation omitted), so the court dismisses Count II without prejudice.

*MBC's Claim for Unjust Enrichment*

Conduent says the court should dismiss Count III because MBC's reliance on the Prime Contract and Subcontract for its other claims "close[s] the door to any equitable claim." [Doc. No. 23 at 15]. MBC responds that it is merely pleading in the alternative.

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." A party may state as many separate claims "as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

But "a party's option to plead inconsistent theories such as breach of contract and unjust enrichment is 'limited.'" Mashallah, Inc. v. W. Bend Mut. Ins. Co., 20 F.4th 311, 325 (7th Cir. 2021). Unjust enrichment is a common law remedy available when there is no contract; an unjust enrichment claim must fail when the parties' conduct is governed by an express contract. Aaron MacGregor & Assocs., LLC v. Zhejiang Jinfei Kaida Wheels Co., 328 F. Supp. 3d 906, 924-925 (N.D. Ind. 2018) (citations omitted). Plaintiffs may plead unjust enrichment as an alternative to breach of contract to allow for the possibility that "the court finds that no contract existed or that a contract existed but was unenforceable." Id. (citation omitted).

15

MBC asserts that its unjust enrichment claim is only an alternative to its breach of the Prime Contract claim, not the breach of the Subcontract claim. But MBC seems to concede that the Subcontract governs its relationship with Conduent. [Doc. No. 1-2 at 7]; *see* QFS Trans., LLC v. Intermodal Cartage Co., 1:22-cv-2356-TWP-MJD, 2023 WL 3267570, at *2 (S.D. Ind. May 5, 2023) (citations omitted) (permitting parties to plead unjust enrichment when express contracts didn't govern their rights or obligations; favorably citing case holding that "[b]ecause Plaintiff admits in its Complaint that it has a valid contract, Plaintiff cannot recover under an unjust enrichment theory from the party . . . with whom it had a contract"); Zoeller v. E. Chi. Second Century, Inc., 904 N.E.2d 213, 221 (Ind. 2009) ("There was an express contract in this transaction, but it was not one to which [the claimants] were parties. . . . That transaction is thus not a bar to the [claimants'] claim for unjust enrichment . . . ."); Quintanilla v. WW Int'l Inc., 541 F. Supp. 3d 331, 353-354 (S.D.N.Y. 2021) (citations omitted) (same under New York law).

MBC's unjust enrichment claim can't survive because the Subcontract is an express contract that governs MBC's and Conduent's rights and duties. MBC can't avoid this outcome by saying its unjust enrichment claim is only an alternative to its claim for breach of the Prime Contract. There is one caveat to this conclusion: MBC has alleged that it provided services under the Prime Contract before the Subcontract was executed.[4] [Doc. No. 1-2 at 4 n.2]. If the

---

[4] Conduent disputes the truth of this allegation, but the court accepts MBC's well-pleaded allegations as true for purposes of a motion to dismiss.

Subcontract didn't cover MBC's conduct or its relationship with Conduent, MBC might be able to plead a claim for unjust enrichment.

MBC's unjust enrichment claim also falls short because it incorporates the preceding paragraphs—including those about the Prime Contract and Subcontract—into the unjust enrichment count. "A party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." Gociman v. Loyola Univ. of Chi., 41 F.4th 873, 887 (7th Cir. 2022) (citation omitted) (plaintiff may plead (1) that there is a contract, and the defendant is liable for breach of it; and (2) that there is no contract, and the defendant is liable for unjustly enriching himself at the plaintiff's expense).

MBC might be able to resolve these issues by amending its complaint, so the court dismisses Count III without prejudice.

*MBC's Request for Fees and Costs*

Conduent asks the court to strike the complaint's request for fees and costs. Because the court will allow MBC to amend its complaint, the court won't strike MBC's request for fees and costs. *See* VitalGo, Inc. v. Kreg Therapeutics, Inc., 370 F. Supp. 3d 873, 880-881 (N.D. Ill. 2019) ("A court may strike particular allegations if '[t]he Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again' in an amended complaint." (citation omitted) (alteration in original)); Fed.

R. Civ. P. 12(f) (court may strike "redundant, immaterial, impertinent, or scandalous matter").

Accordingly, the court dismisses MBC's complaint without prejudice and denies Conduent's request that the court strike MBC's prayer for attorney's fees and costs.

### B. MBC's Motion to Exclude and Conduent's Motion for Leave to File a Surreply

In its reply brief, Conduent asks the court to take judicial notice of the prime contract at issue in ESG Tech. Servs. v. Advantage Health Sols., Inc., No. 1:09-cv-30-TWP-TAB, 2011 WL 2267550 (S.D. Ind. June 6, 2011), and the Indiana Department of Administration, Division of Supplier Diversity website. MBC opposes the request and moves to exclude those materials. [Doc. No. 24].

The court may only consider the pleadings[5] and judicially noticed facts when deciding a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d); Parungao v. Cmty. Health Sys., Inc., 858 F.3d 452, 457 (7th Cir. 2017) (citations omitted). To consider other evidence, a court must treat the Rule 12(b)(6) motion as a Rule 56 motion for summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

---

[5] The pleadings include the complaint, the answer, and copies of written instruments attached to the complaint. Fed. R. Civ. P. 7(a), 10(c).

The court may take judicial notice of adjudicative facts that aren't subject to reasonable dispute. Fed. R. Evid. 201. "[C]ourts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." Gen. Elec. Cap. Corp. v. Lease Resol. Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b) advisory committee's note).

Regardless of whether the ESG prime contract is an adjudicative fact, the ESG decision is sufficiently robust that it is unnecessary to take judicial notice of the prime contract. *See* id. (judicial notice "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard."); Fed. R. Evid. 403 (court may exclude needlessly cumulative evidence). It is unnecessary to address the parties' other arguments on this topic.

Conduent also asks the court to judicially notice the Division of Supplier Diversity Website. MBC's complaint includes language from specific portions of the Division of Supplier Diversity's MBE/WBE policy, and Conduent seeks to have the court review the state agency's website to establish that the Division of Supplier Diversity "operates independently of the Prime Contract." [Doc. No. 23 at 10 n.2]. While the court may take judicial notice of government websites, *e.g.*, Betz v. Greenville Corr. Inst., No. 14-cv-104-MJR, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014), the court doesn't see how the website is relevant to the motion to dismiss, Fed. R. Evid. 401, or isn't needlessly cumulative, Fed. R. Evid. 403.

Conduent moves for leave to file a surreply to the motion to exclude. MBC doesn't oppose the motion. "[T]he 'purpose for having a motion, response, and

reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion.'" Best v. Safford, No. 1:16-cv-2549-TWP-MJD, 2018 WL 1794911, at *2 (S.D. Ind. Apr. 16, 2018) (citation omitted). Surreplies are only permitted to address newly raised evidence or arguments. White v. Valeo Lighting Sys. N. Am., Inc., No. 4:19-cv-226-TWP-DML, 2021 WL 50395443, at *2 (S.D. Ind. Oct. 29, 2021) (citation omitted).

Conduent says it should be able to file a surreply because MBC raised new arguments in its reply brief and misstated the law. Conduent overstates MBC's conduct. After reviewing the opening, response, and reply briefs, MBC's discussion of adjudicative versus legislative facts is an appropriate reply to Conduent's response brief. The court needn't address Conduent's other qualms to resolve either the motion for surreply or the underlying motion to exclude. The court's analysis of both the motion to dismiss and the motion to exclude don't depend on any of Conduent's points of contention in its surreply. Accordingly, the surreply is unnecessary. See Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils., 410 F. Supp. 3d 943, 950 (S.D. Ind. 2019); Pope v. Espeseth, Inc., 228 F. Supp. 3d 884, 888 (W.D. Wis. 2017).

The court won't take judicial notice of the contract or the website, grants the motion to exclude, doesn't consider those materials in deciding the motion to dismiss, and doesn't convert the Rule 12(b)(6) motion into one for summary judgment. The court denies Conduent's motion for leave to file a surreply.

IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the motion to dismiss and DISMISSES MBC's complaint WITHOUT PREJUDICE. [Doc. No. 20]. The court GRANTS MBC 21 days from the date of this order to file an amended complaint. The court GRANTS MBC's motion to exclude, [Doc. No. 24], and DENIES Conduent's motion for leave to file a surreply, [Doc. No. 27].

SO ORDERED.

ENTERED:  August 18, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution to all counsel of record via CM/ECF.

21