UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MBC GROUP, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 1:22-cv-01869-TWP-TAB |
| CONDUENT STATE & LOCAL SOLUTIONS, INC. Successor by Merger to CONDUENT HUMAN SERVICES, LLC, | ) ) ) ) |
| Defendant. | ) ) |

### ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

This matter is before the Court on Plaintiff MBC Group, Inc.'s ("MBC"), Motion for Leave to File Second Amended Complaint (Filing No. 53). In the Entry dated February 23, 2024, the Court **denied** the Motion for Leave as moot as to Count II, and ordered briefing to proceed as to Counts I and III only. For the following reasons, MBC's request for leave to file a Second Amended Complaint is **granted** as to Counts I and III.

### I.   BACKGROUND[1]

This action relates to a prime government contract (the "Prime Contract") for staffing services between Conduent and the Indiana Family and Social Services Administration (the "State"), and a related subcontract (the "Subcontract") between Defendant Conduent State & Local Solutions, Inc. ("Conduent") and MBC. MBC alleges that the State awarded the Prime Contract to Conduent based in part on Conduent's Indiana Veteran Owned Small Business ("IVOSB") participation plan. The Prime Contract's IVOSB compliance provision (the "IVOSB Provision")

---

[1] The Court detailed the alleged facts and procedural history of this case in its February 23, 2024 Entry (Filing No. 66). Here, the Court provides only a summary of facts pertinent to the Motion for Leave.

states that Conduent will commit 3.05 percent of its work under the Prime Contract to MBC. Conduent and MBC entered into the Subcontract pursuant to the Prime Contract's directive. The Subcontract says MBC will perform a portion of services under the Prime Contract but does not include the 3.05 percent participation rate.

In September 2022, MBC filed a complaint in state court, alleging that Conduent breached the Prime Contract and Subcontract by failing to subcontract 3.05 percent of its work under the Prime Contract to MBC, and that Conduent was unjustly enriched when it performed some of that work itself. MBC asserts three claims: Count I for breach of the Prime Contract, which MBC asserts as a third-party beneficiary; Count II for breach of the Subcontract; and Count III for unjust enrichment. On September 22, 2022, Conduent removed this action to federal court and moved to stay discovery pending resolution of a forthcoming motion to dismiss (Filing No. 1; Filing No. 16). The Magistrate Judge granted the motion to stay discovery, and a few days later, Conduent filed its motion to dismiss (Filing No. 19; Filing No. 20). On August 18, 2023, the Court dismissed MBC's claims without prejudice (Filing No. 31).

On September 7, 2023, MBC filed its first amended complaint (Filing No. 35), and on September 29, 2023, Conduent filed a Second Motion to Dismiss, requesting dismissal with prejudice (Filing No. 40). Conduent also filed a renewed motion to stay discovery pending the Second Motion to Dismiss, which the Magistrate Judge granted (Filing No. 42; Filing No. 50). On November 16, 2023, MBC filed its response to the Second Motion to Dismiss and the instant Motion for Leave (Filing No. 53; Filing No. 54). Conduent then moved to stay briefing on the Motion for Leave pending its Second Motion to Dismiss, which the Magistrate Judge granted (Filing No. 58; Filing No. 59).

In February 2024, the Court granted Conduent's Second Motion to Dismiss, but without prejudice as to some claims (the "February 2024 Entry"). As to Count I (breach of the Prime Contract), the Court held that the terms of the Prime Contract, without more, failed to show that MBC was a third-party beneficiary. The Court also found that the State's IVOSB participation program and procurement documents[2] did not show the State's intent to directly benefit MBC ([Filing No. 66 at 13](#)–15). However, the Court dismissed Count I without prejudice because MBC's Second Amended Complaint "cite[d] new extrinsic evidence of circumstances surrounding the execution of the Prime Contract, which may affect the adequacy of MBC's claim." *Id.* at 16.

As to Count II (breach of the Subcontract), the Court held that MBC could not use the Subcontract to enforce the terms of the Prime Contract's IVOSB Provision, and that MBC was precluded from recovering damages for an alleged breach of the Subcontract's notice provision. *Id.* at 18–22. The Court found that MBC could not state a viable claim for breach of the Subcontract even with further opportunity to amend, so the Court dismissed Count II with prejudice and denied MBC's Motion for Leave as to Count II.

As to Count III (unjust enrichment), the Court held that neither the Prime Contract nor the Subcontract necessarily bars MBC's unjust enrichment claim, but that the claim must nevertheless be dismissed. The Court explained that under Indiana law, MBC may plead unjust enrichment in the alternative to its claim for breach of the Prime Contract, since the parties dispute whether MBC may enforce the Prime Contract as a third-party beneficiary. *Id.* at 24–25. The Court also explained that the existence of the Subcontract would not bar MBC's unjust enrichment claim if the Subcontract and IVOSB Provision, which form the basis of MBC's unjust enrichment claim, cover different subject matters. *Id.* at 26–27. But because Count II in the first amended complaint

---

[2] MBC included allegations about the State's IVOSB participation program and procurement documents in its response opposing the Second Motion to Dismiss but did not include those allegations in the first amended complaint.

expressly alleged that the Subcontract covers the same subject matter as the IVOSB Provision, Count III was barred.  *Id.* at 27.  However, the Court stated "[b]ecause the Court is dismissing Count II with prejudice and denying MBC's Motion for Leave as to Count II, MBC's Second Amended Complaint may be able to properly plead Count III in the alternative to Count I."  *Id.*  The Court therefore denied Count III without prejudice.

The Motion for Leave as to Counts I and III is now ripe for the Court's review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within twenty-one days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)."  After a responsive pleading has been filed and twenty-one days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule, however, "do[es] not mandate that leave be granted in every case.  In particular, a district court may deny a plaintiff leave to amend his complaint if there is undue delay, bad faith[,] or dilatory motive . . . [,] undue prejudice . . . , [or] futility of amendment."  *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (citation and quotation marks omitted).  "Whether to grant or deny leave to amend is within the district court's discretion."  *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

## III.    DISCUSSION

In its Motion for Leave, MBC asserts that it recently obtained an affidavit from former Conduent employee Therome Buford (the "Buford Affidavit"), procurement documents from the Indiana Department of Administration ("IDOA") Division of Supplier Diversity (the "Procurement Documents"), and other IDOA documents concerning the State's IVOSB participation program

4

([Filing No. 53 at 2](#)–3). MBC acknowledges that this Court has "ruled that MBC being named in the Prime Contract alone does not establish the requisite contractual intent to benefit a third-party," but argues that the Buford Affidavit and IDOA documents demonstrate such an intent. *Id.* at 3–4.

Conduent responds that amendment of Counts I and III[3] would be futile because the Second Amended Complaint fails to cure the deficiencies identified in the Court's February 2024 Entry ([Filing No. 69 at 1](#)–2). Conduent also requests that the Court award Conduent its costs and fees upon dismissal of the Second Amended Complaint. The Court will address Counts I and III in turn before discussing Conduent's request for costs and fees.

### A.     Count I: Breach of the Prime Contract

Conduent argues that the new allegations in the Second Amended Complaint still fail to show that MBC is a third-party beneficiary to the Prime Contract for three reasons. First, MBC is barred by the parol evidence rule from relying on extrinsic evidence in proving contractual intent. Second, MBC should be precluded from relying on the new extrinsic evidence due to delay. And third, even despite the new extrinsic evidence, MBC cannot show it is a third-party beneficiary to the Prime Contract. The Court will address each of MBC's arguments in turn.

Conduent first argues that MBC may not rely on extrinsic evidence to show the contracting parties' intent ([Filing No. 69 at 4](#)–6). It is well settled under Indiana law that a court may not consider extrinsic evidence when interpreting an unambiguous contract. However, as the Court explained in its February 2024 Entry, Indiana courts and the Seventh Circuit, applying Indiana law, have held that courts must determine the contracting parties' intent in light of the circumstances surrounding the formation of the contract. ([Filing No. 66 at 16](#)–17 (quoting *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 381 (7th Cir. 2010) ("In determining the intention of the parties to a contract,

---

[3] Conduent does not address Count II in its response opposing the Motion for Leave because the Court previously dismissed Count II with prejudice and denied the Motion for Leave as to Count II ([Filing No. 66](#)).

5

Indiana courts . . . have a 'duty to consider … the surrounding circumstances which existed at the time the contract was made,' including 'the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract' . . . ." (quotation marks and citation omitted)))); *see also Randy Faulkner & Assocs., Inc. v. Restoration Church, Inc.*, 60 N.E.3d 274, 280 (Ind. Ct. App. 2016) ("We must give effect to the intentions of the parties, which are ascertained from the language of the contract in light of the surrounding circumstances." (citing *HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318, 322 (Ind. Ct. App. 2006))). MBC may therefore offer extrinsic evidence of circumstances surrounding formation of the Prime Contract to show "the intended function" of the Prime Contract's terms, including the IVOSB Provision. *Brian v. Reg'l Innovation & Startup Educ.*, 225 N.E.3d 173 (Table), 2023 WL 8178663, at *4 (Ind. Ct. App. Nov. 27, 2023) (citing *Wecker v. Kilmer*, 294 N.E.2d 132, 203 (Ind. 1973) (noting that at times "parol evidence should be permitted to determine the intent of the parties")).

Next, Conduent argues that MBC should be barred from citing extrinsic evidence due to delay (Filing No. 69 at 6). Conduent asserts that this action has been pending since September 2022, but MBC waited until November 2023 to move for leave to file its Second Amended Complaint. *Id.* at 7. The events between September 2022 and November 2023 show that MBC did not unreasonably delay. In November 2022, Conduent moved to dismiss MBC's original complaint and successfully moved to stay discovery. On August 18, 2023, the Court dismissed the original complaint without prejudice, and less than three weeks later, MBC filed its first amended complaint. On September 29, 2023, Conduent filed its Second Motion to Dismiss and a renewed motion to stay discovery. MBC opposed the stay, arguing that discovery was needed to respond to the Second Motion to Dismiss (Filing No. 44). Around this same time, MBC learned that Buford

6

was no longer employed by Conduent and began attempting to contact him, even though formal discovery had been stayed (Filing No. 70 at 12). MBC's counsel met with Buford on October 15, 2023, and obtained his Affidavit the next day. *Id.* at 13. On November 2, 2023, the Magistrate Judge granted Conduent's renewed motion to stay discovery. Shortly thereafter, on November 16, 2023, MBC filed the instant Motion for Leave. The record shows that MBC timely filed a first amended complaint after the August 2023 dismissal of its original complaint, and promptly filed a Motion for Leave after meeting with Buford and after the Magistrate Judge decided to extend the discovery stay.[4]

Moreover, delay "by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason. Typically, that reason . . . is prejudice to the non-moving party." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (citation omitted). Conduent does not contend it would suffer any prejudice if amendment were permitted, and no potential prejudice is apparent. The parties have not yet begun discovery, and this case has effectively remained at the pleading stage since November 2022. The Court therefore declines to deny the Motion for Leave on the basis of delay.

Lastly, Conduent argues that amendment of Count I would be futile because the Second Amended Complaint still does not allege that Conduent or the State intended to directly benefit MBC under the Prime Contract (Filing No. 69 at 7). Conduent cites caselaw reciting the "general rule" that subcontractors to government contracts are only incidental beneficiaries to those contracts, though Conduent cites only cases involving federal government contracts. *Id.* at 8–9. Conduent also cites two cases discussed in the Court's February 2024 Entry — *ESG Technical Services, LLC v. Advantage Health Solutions, Inc.*, No. 09-cv-00030, 2011 WL 2267550 (S.D. Ind.

---

[4] As the Court noted in its February 2024 Entry, MBC could have chosen to wait much longer to move for leave to file a Second Amended Complaint but chose not to (Filing No. 66 at 16).

June 6, 2011) ("*ESG*"), and *Bucher & Christian Consulting, Inc. v. Novitex Enterprise Solutions, Inc.*, No. 15-cv-00010, 2015 WL 5210539 (S.D. Ind. May 22, 2015) ("*Bucher*"). In *ESG* and *Bucher*, the Court decided on summary judgment that an MBE/WBE provision in a government contract, without more, was insufficient to establish third-party beneficiary status.

The Court has already held that the Prime Contract in this case, without more, is insufficient to establish MBC's third-party beneficiary status. The Court also has held that the IDOA policies and Procurement Documents do not show the State's intent to benefit MBC in particular (Filing No. 66 at 15). However, the Second Amended Complaint contains new allegations supporting MBC's claim based on the Buford Affidavit. The Buford Affidavit describes the procurement process by which Conduent obtained the Prime Contract, the reasons why Conduent made certain affirmations during the procurement process, and the reason MBC was named in the Prime Contract. According to Buford, the State's Request for Proposal ("RFP") for the Prime Contract provided that "extra points were to be given based upon a company's commitment to the utilizations of WMBE and IVOSB subcontractors on the assignment" and "[o]nly one company would be awarded these extra points" (Filing No. 53-1 at 197). Buford further states that as part of the procurement process for the Prime Contract, Conduent "was required to affirm that it would abide by and be obligated to perform all terms and requirements listed and outlined in the RFP— including, but not limited to, its commitment to utilize the specific MBWE/IVOSB subcontractors listed at the stated participation percentage rates." *Id.* at 198. The affirmation serves to "prevent[] a prime contractor from avoiding its WMBE/IVOSB commitment after it has been awarded a professional services contract—which has historically been a problem in Indiana." *Id.* The affirmation also "prevents a contractor from proposing to use a WMBE/IVOSB subcontractor at an overly inflated rate (such as 75%) for no other reason than to simply be awarded the contract."

8

*Id.* Buford also asserts that "[i]n or about 2018, IDOA began requiring the WMBE/IVOSB subcontractors and participation rates to be specifically listed on the face of the Prime Contract itself" to "assure[] that Conduent would abide by the subcontractor commitment it had made in obtaining the award of the [Prime Contract]." *Id.* at 199.

This evidence distinguishes this case from *ESG* and *Bucher*, which were decided on summary judgment and were based on the language of the prime contracts alone. In light of the surrounding circumstances alleged in the Buford Affidavit, it is plausible that the State and Conduent intended for the IVOSB Provision to bestow third-party beneficiary rights on MBC and allow MBC to enforce the Prime Contract itself.

Conduent argues that the Buford Affidavit does not show an intent to directly benefit MBC because Buford "can have no personal knowledge of the State's intentions" ([Filing No. 69 at 13](#)). But Buford can attest to the intent of the other contracting party, Conduent. Further, at the pleadings stage, the Court must accept MBC's factual allegations as true. The scope of Buford's personal knowledge is an issue for summary judgment or trial.

The Court is not presently deciding whether MBC is a third-party beneficiary to the Prime Contract, and it remains to be seen whether Count I will survive to trial. Regardless, the new allegations in the Second Amended Complaint are enough to raise MBC's third-party beneficiary claim beyond the speculative level, which is all that is required at the pleadings stage. *See Best Flooring, Inc. v. BMO Harris Bank, N.A.*, No. 12-cv-5, 2013 WL 164237, at *4 (S.D. Ind. Jan. 15, 2013). Amendment of Court I would not be futile, and the Court therefore **grants** MBC's Motion for Leave as to Count I.

B.  **Count III: Unjust Enrichment**

Conduent also argues that amendment of Count III would be futile because MBC's unjust enrichment claim is barred by the existence of the Prime Contract and Subcontract. The Court

9

rejected this argument in its February 2024 Entry (Filing No. 66 at 24–27). Specifically, the Court held that under *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213 (Ind. 2009), the existence of an enforceable contract does not bar a non-party from suing for unjust enrichment. Conduent argues that *Zoeller* is distinguishable because in that case, the non-party had not entered into a separate subcontract with either of the contracting parties, like MBC did with Conduent (Filing No. 69 at 15). Conduent's argument misses the mark. The Court cited *Zoeller* only in concluding that the existence of the Prime Contract (not the Subcontract) did not bar MBC's alternative claim for unjust enrichment.

As to the Subcontract, the Court explained that under Indiana law, the existence of a contract bars only equitable claims regarding subject matter covered by the express terms of the contract (Filing No. 66 at 26 (citing *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992))). The Court stated that if the Subcontract covers a different subject matter than the IVOSB Provision, then the existence of the Subcontract does not bar MBC's unjust enrichment claim. However, because the first amended complaint expressly alleged that the Subcontract covers the same subject matter as the IVOSB Provision, MBC's unjust enrichment claim was barred (Filing No. 66 at 27). Now that Count II has been dismissed with prejudice—in part because the Subcontract does not incorporate the terms of the IVOSB Provision—the Court sees no reason to dismiss Count III at the pleadings stage. The issue of whether the Subcontract in fact covers the same subject matter of the IVOSB Provision may be raised on summary judgment or at trial. MBC's Motion for Leave is **granted** as to Count III.

C.  **Conduent's Request for Fees and Costs**

Conduent requests that the Court grant its request for fees and costs "[u]pon denying MBC's motion for leave" (Filing No. 69 at 15). The Court is not denying the Motion for Leave, so Conduent's request for fees and costs is **denied**.

10

### IV. CONCLUSION

For the foregoing reasons, MBC's Motion for Leave (Filing No. 53) is **GRANTED in part and DENIED in part**. The Motion for Leave is **GRANTED** as to Counts I and III and **DENIED as moot** as to Count II and MBC's request for attorneys' fees and costs, pursuant to the Court's February 23, 2024 Entry. The **Clerk is directed** to re-docket the proposed Second Amended Complaint submitted at Filing No. 53-1, and the Second Amended Complaint will become the operative pleading as of the date of this Order. Conduent is granted **thirty (30) days** to respond to Counts I and III, only, of the Second Amended Complaint or to file a motion to dismiss, if appropriate.

SO ORDERED.

Date: 4/16/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Riley H. Floyd
HOOVER HULL TURNER LLP
rfloyd@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Thomas R. Ruge
LEWIS & KAPPES PC
truge@lewis-kappes.com

Matthew S. Tarkington
LEWIS & KAPPES PC
mtarkington@lewis-kappes.com

Finis Tatum, IV
HOOVER HULL TURNER LLP
ftatum@hooverhullturner.com

Taylor Webster
LEWIS KAPPES, PC
twebster@lewis-kappes.com